UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE No. | 15-22081 (JJT) |
| | ) | | |
| KATALIN DEMITRUS, | ) | CHAPTER | 7 |
| Debtor. | ) | | |
| | ) | | |
| | ) | | |
| ANTHONY S. NOVAK, | ) | ADV. PRO. No. | 17-02036 (JJT) |
| CHAPTER 7 TRUSTEE | ) | | |
| | ) | | |
| Plaintiff | ) | | |
| V. | ) | | |
| | ) | RE: ECF No. | 19, 24, 25 |
| UNIVERSITY OF MIAMI, | ) | | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |

## APPEARANCES

Jeffrey Hellman, Esq.                                                         Counsel for the Plaintiff
Law Offices of Jeffrey Hellman, LLC
195 Church Street, 10th Floor
New Haven, CT 06510


Ilan Markus, Esq. and Daniel P. Elliot, Esq.                      Counsel for the Defendant
LeClairRyan, P.C.
545 Long Wharf Drive, 9th Floor
New Haven, CT 06511


## MEMORANDUM OF DECISION ON
## DEFENDANT'S MOTION TO DISMISS

I.    INTRODUCTION

Pending before this Court is a Motion to Dismiss (ECF No. 19) filed by the Defendant,

University of Miami ("Defendant" or "University"), the Memorandum of Law in Opposition to

the Motion to Dismiss ("Opposition", ECF No. 24), filed by the Plaintiff, the Chapter 7 Trustee

("Trustee"), and the related Reply Brief (ECF No. 25). For the reasons stated herein, the Court

grants the Motion to Dismiss.

## II.    JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§157 and 1334(b) and may hear and

determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and

(b)(1). This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (B), (E), (H) and (O).

The parties herein have consented to this Court's jurisdiction to enter final orders in this

Adversary Proceeding. *See* ECF Nos. 30 and 31.

## III.    FACTUAL BACKGROUND

On December 1, 2015, the Debtor, Katalin Demitrus, filed a voluntary petition for relief

under Chapter 7 of the Bankruptcy Code. On July 19, 2017, the Trustee initiated this Adversary

Proceeding against the University and asserted the following causes of action: (1) Constructive

Fraudulent Transfer, pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550 and 551; and (2) UFTA

Constructive Fraudulent Transfer, pursuant to 11 U.S.C. § 544(b)(1) and Conn. Gen. Stat. §§ 52-

552e(a)(2) and 52-552f(a) ("CUFTA"). On November 28, 2017, the Trustee filed the instant

Amended Complaint which, with the exception of one paragraph, is a mirror image of the

original Complaint.

On December 7, 2017, the University filed the Motion to Dismiss and accompanying

Memorandum of Law. On January 12, 2018, the Trustee filed the Opposition. On January 19,

2018, the University filed a reply. On February 12, 2018, both parties appeared and presented

oral arguments before the Court. Following the hearing, the matter was taken under advisement.

In his Complaint, the Trustee alleges that the Debtor is the parent of Alexander N. Demitrus who, at all relevant times, was over the age of 18 years.[1] He alleges that between September of 2013 to October of 2014, when Alexander was a student at the University, the Debtor made a number of transfers to the University by means of a Federal Direct Parent PLUS loan ("Parent PLUS Loan") to pay for Alexander's tuition. The Trustee claims that these payments constitute constructive fraudulent transfers, pursuant to the Bankruptcy Code and CUFTA. He seeks that the total of $66,616.00 be avoided and/or set aside and recovered for the benefit of the Debtor's estate.

## IV.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable herein by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, permits a party to move to dismiss a case for "failure to state a claim upon which relief can be granted." The Supreme Court has stated, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A pleading that offers, "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557)

---

[1] In Connecticut, any person over the age of 18 years is considered an adult. *See* Conn. Gen. Stat. § 1-1d.

(internal quotations omitted). Instead, a plaintiff must provide enough factual support that, if true, would "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows the court to eliminate actions that are fatally flawed in their legal premise and destined to fail, and thus "streamlines litigation by dispensing with needless discovery and factfinding." *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989) ("[I]f as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one") (internal citation and quotations omitted).

V.     DISCUSSION

Under Section 548 of the Bankruptcy Code, a transfer may only be avoided under Section 548 if, *inter alia*, the transferred funds constituted "an interest of the debtor in property."[2] Likewise, a transfer may only be avoided under Section 544 and CUFTA if, *inter alia*, the transferred funds constitute "an asset or an interest in an asset of the Debtors."[3] The federal and state standards for "property" and "asset" are substantively equivalent.

The Trustee alleges that the "transfers" here consisted of the Parent PLUS Loan payments by the Debtor to the University. Compl. at ¶¶ 14; 23. Whether the Parent PLUS Loan

---

[2] *See* 11 U.S.C. § 548(a)(1)(B)(i) ("The trustee may avoid any transfer … *of an interest of the debtor in property*, or any obligation … incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily … received less than a reasonably equivalent value in exchange for such transfer or obligation.") (emphasis added).

[3] *See* 11 U.S.C. §544(b)(1) ("[T]he trustee may avoid any transfer *of an interest of the debtor in property* or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of the title") (emphasis added); Conn. Gen. Stat. §§ 52-552e(a)(2) and 52-552f(a) ("A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, if the creditor's claim arose before the transfer was made or the obligation was incurred and if the debtor made the transfer or incurred the obligation … (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation."). Pursuant to Conn. Gen. Stat. § 52-552b(12), "'[t]ransfer' means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with *an asset or an interest in an asset*." (emphasis added).

4

payments constitute property or assets of the Debtor is generally determined by applicable non-bankruptcy law, "unless some federal interest requires a different result." *Butner v. U.S.*, 440 U.S. 48, 55 (1979); *see also Official Committee of Unsecured Creditors v. PSS Steamship Co., Inc. (In re Prudential Lines, Inc.)*, 928 F. 2d 565, 569 (2d Cir. 1991) ("The nature and extent of the debtor's interest in property is determined by applicable non-bankruptcy law") (citations omitted).

Parent PLUS Loans are governed by a clear federal statutory program: the Higher Education Act of 1965 (20 U.S.C. § 1001 *et seq*) (the "HEA"), as well as its implementing regulations (34 C.F.R. § 685.100 *et seq*) (the "Regulations"). The Direct PLUS Loan program was established by Congress for the purpose of allowing eligible parents to enable their dependent children to pursue their courses of study in college. *See* 20 U.S.C. § 1087a(a). Under the Regulations, only "[a]n eligible parent" may borrow under the Direct PLUS Loan program. *See* 34 C.F.R. § 685.101. Parent PLUS Loans may only be issued "to pay for the student's cost of attendance …" at "[c]olleges, universities, graduate and professional schools, vocational schools, and proprietary schools …" *See* 34 C.F.R. § 685.101(a). "A parent is eligible" if "[t]he parent is borrowing to pay for the educational costs of a dependent undergraduate student … " *See* 34 C.F.R. § 685.200(c)(2)(i). The amount of a Parent PLUS Loan is determined based on financial information of the borrowers, the rate of tuition and other costs of attendance at the university; the amount that may be borrowed cannot exceed the amount of tuition and other authorized educational expenses, and the Parent PLUS Loan can only be used for tuition and other qualified educational expenses. *See* 34 C.F.R. § 682.204(g) and (j).

Under 20 U.S.C. § 1078-2(c), "All loans made under this section shall be … disbursed by: (1) an electronic transfer of funds from the lender to the eligible institution; or (2) a check

copayable to the eligible institution and the graduate or professional student or parent borrower." If a student withdraws from the university, transfers to another university, or otherwise loses his eligibility for the loan, the university is required to pay any refund of tuition to the Department of Education ("DOE") or transfer the funds to the institution to which the student transferred. *See* 34 C.F.R. § 682.607. The HEA permits the DOE to take enforcement action seeking criminal penalties against any person who obtains PLUS loan funds by fraud or who misapplies such funds. *See* 20 U.S.C. § 1097(a). The criminal penalties include fines of up to $20,000.00 and imprisonment for up to 5 years, or both. *Id*.

Here, in regard to the "transfers", the Complaint only alleges that funds were disbursed to the University "by means of a Direct Parent PLUS loan." Compl. at ¶ 14. The HEA and its Regulations make abundantly clear that the funds allegedly disbursed to the University could not possibly have been the Debtor's property, nor could those funds have ever been within the reach of creditors.

In examining the issues raised by the Motion to Dismiss, the Court is persuaded that a recent decision, *Eisenberg v. Pennsylvania State University (In re Lewis)*, 574 B.R. 536 (Bankr. E.D. Pa. 2017) (Fehling, J.) is dispositive on the issue of whether the proceeds of a Parent PLUS Loan constitute property of the debtor available for the benefit of creditors.[4] In that case, a Chapter 7 trustee commenced an adversary proceeding against Penn State University seeking the recovery of Parent PLUS Loan proceeds paid to the university. The trustee asserted fraudulent transfer claims pursuant to Section 548, as well as state law. The court dismissed the case on the pleadings, beginning by classifying the trustee's argument as "a relatively new legal theory." *Id*.

---

[4] This Court has respectfully declined to follow Judge Fehling's analysis regarding reasonably equivalent value. *See Thomas C. Boscarino Ch. 7 Trustee v. Board of Trustees of Connecticut State University System (In re Knight)* Ch. 7 Case No. 15-21646, Adv. Pro. No. 15-02064 (JJT), 2017 WL 4410455, at *1 (Bankr. D. Conn. 2017).

at 537. After acknowledging the trustee's burden to prove that the transferred funds constituted

property of the debtor, the court held:

> "[T]he proceeds from the Parent PLUS loans were never [the debtor's] property,
> were never in his possession or control, and were never remotely available to pay
> [the debtor's] creditors. As a result, the [DOE's] payment of the Parent PLUS
> loan proceeds to Penn State did not diminish [the debtor's] bankruptcy estate and
> avoidance of these transfers would be improper and unwarranted."

*Id*. at 539.

After extensively reviewing and citing to the relevant portions of the HEA and the

Regulations, set forth above, the court further held:

> "As evidenced by the [HEA] and the regulations promulgated thereunder, the
> funds represented by the Parent PLUS loans at issue would never have come into
> existence had [the debtor's] children not attended Penn State. The proceeds of the
> Parent PLUS loans at issue did not and could not have passed through [the
> debtor's] hands and did not and could not have been used to pay any of [the
> debtor's] debt and could not be used for any other purpose than to pay the cost of
> the children's tuition and other qualified educational expenses at Penn State."

*Id*. at 540. The court continued:

> The Parent PLUS loan proceeds were never in [the debtor's] possession or
> control, could not ever be in [the debtor's] possession or control, and therefore
> could not possibly be considered to be property of the estate …
>
> For all of these reasons, I find that applicable nonbankruptcy law (*i.e.,* the [HEA]
> and the Regulations promulgated thereunder), expressly prevented the Parent
> PLUS loan proceeds from becoming property of [the debtor] or his estate. In
> addition, the Parent PLUS proceeds were not and could not have been property in
> which [the debtor] had an interest or over which he had control. None of the
> Parent PLUS proceeds could have been available in any circumstance to pay [the
> debtor's] creditors. Because [the debtor] never had possession of, control over, or
> an interest in, the Parent PLUS loan proceeds, those proceeds could not have been
> available to pay [the debtor's creditors].
>
> Permitting the trustee to proceed with this litigation would enable fraudulent
> transfer avoidance statutes to be used improperly as revenue generating tools.
> Such usage would do nothing to further the fundamental premise underlying both
> the Bankruptcy Code and PUFTA fraudulent transfer provisions, which is 'to
> prevent a debtor from putting assets otherwise available to its creditors out of
> their reach … and to prevent the unjust diminution of the debtor's estate.'

7

*Id.* Judge Fehling accordingly dismissed the trustee's complaint.

Similarly, in *Shapiro v. Gideon (In re Gideon)*, Case No. 15-50464, Adv. Pro. No. 16-4939 (TJT) (Bankr. E.D. Mich. Apr. 26, 2017) (Tucker, J.), the court entered summary judgment against the Chapter 7 trustee in an adversary proceeding also seeking recovery of Parent PLUS Loan proceeds from DePaul University, pursuant to a fraudulent transfer theory.[5] The court found that the proceeds of Parent PLUS Loans simply could not constitute property of the debtor that was available for the benefit of creditors. In granting summary judgment, Judge Tucker held:

> [T]he evidence is clear and undisputed that at no time did the loan proceeds – did these loan proceeds go into a bank account of the bankruptcy debtor … nor did they go in any way through his hands or … to his possession. He never had possession of the loan funds. … [S]o it certainly appears from all of that that while the bankruptcy debtor … did incur an obligation as … the borrower on these PLUS loans and quite arguably incurred an obligation that might be avoidable as a … fraudulent obligation because the debtor … may not have received reasonably equivalent value for the obligation he incurred on these loans … avoidance of the obligation that [the debtor] incurred is not what the trustee seeks in this adversary proceeding. That's clear from the complaint and the argument on … this motion. It is, rather, avoidance of the transfer and recovery of the funds – the loan funds – that were transferred from the Department of Education to DePaul under the PLUS loans at issue. Those are the transfers alleged in the trustee's complaint and it's clear the trustee is seeking avoidance of those transfers, and not avoidance of any obligation that the debtor … incurred in connection with those loans … [U]nder the undisputed facts, material facts here that are relevant to the issue, the record clearly shows, and there can be no genuine dispute here – that the loan funds at issue that were transferred to DePaul were not property of the debtor …[6]

The clear consensus forming in the courts on this issue is reflective of the purpose underlying the trustee's avoidance powers, namely, to prevent the depletion of assets that

---

[5] Judge Tucker did not issue a written memorandum of decision, but rather explained the reasoning behind his decision on the record of a April 26, 2017 hearing. *See Shapiro v. Gideon (In re Gideon)*, No. 16-04939 (TJT) (Bankr. E.D. Mich. Apr. 26, 2017), ECF No. 34; *See also* Transcript of Oral Argument attached to the Mot. to Dismiss at Tab B.
[6] Mot. to Dismiss at Tab B pp. 15-16.

otherwise would have been available to creditors.[7] Requiring that transfers subject to avoidance could have been available to creditors comports with the spirit and purpose of fraudulent transfer provisions in the Bankruptcy Code and CUFTA, *i.e.*, "to protect creditors by preventing a debtor from placing assets otherwise available to pay creditors out of reach of those creditors." *See Eisenberg*, 574 B.R. at 539 (citations omitted) (discussing federal and comparable Pennsylvania law). That purpose is not frustrated where, as here, the Debtor never exercised dominion or control over the funds, and the transfer of the funds did not diminish the Debtor's estate. *See In re Kennedy*, 279 B.R. 455, 460 (Bankr. D. Conn. 2002).

Ultimately, the Trustee has failed to allege, and, given the federal statutory and regulatory scheme regulating DOE loans[8], is without the ability to demonstrate the requisite interest to support his avoidance claims under applicable non-bankruptcy law. Therefore, as a matter of law, the Complaint fails to state a claim upon which relief can be granted.

Accordingly, this Motion to Dismiss is GRANTED and judgment shall enter in favor of the Defendant.[9]

---

[7] *See, e.g., Frontier Bank v. Brown (In re Northern Merchandise, Inc.)*, 371 F. 3d 1056, 1060 (9th Cir. 2004) ("[Section 548] seeks to prevent the debtor from depleting the resources available to creditors through gratuitous transfers of the debtor's property …") (citation and quotations omitted); *R2 Advisors, LLC v. Equitable Oil Purchasing Co. (In re Red Eagle Oil, Inc.)*, 567 B.R. 615, 626 (Bankr. D. Wyo. 2017) ("The Bankruptcy Code's fraudulent transfer statute means to protect creditors from transactions that are designed to, or have the effect, of unfairly draining the assets available to satisfy creditor claims or dilute legitimate creditor claims"); *Official Committee of Unsecured Creditors v. Sabine Oil & Gas Corp. (In re Sabine Oil & Gas Corp.)*, 562 B.R. 211, 225 (S.D.N.Y. 2016) ("In determining whether a conveyance is fraudulent, [t]he touchstone is the unjust diminution of the estate of the debtor that otherwise would be available to creditors") (citation omitted); *Ivey v. First Citizens Bank & Trust Co.*, 539 B.R. 77, 83 (M.D.N.C. 2015) ("[t]he purpose of the Bankruptcy Code's avoidance provisions is to prevent a debtor from making transfers that diminish the bankruptcy estate to the detriment of creditors") (citation omitted); *Geltzer v. Xavieran High School (In re Akanmu)*, 502 B.R. 124, 130 (Bankr. E.D.N.Y. 2013) ("The purpose of [Section 548] is to set aside transactions that 'unfairly or improperly deplete a debtor's assets' so that the assets may be made available to creditors") (citation omitted).

[8] In construing two federal statutes, such as the HEA and the Bankruptcy Code, "statutes should be read consistently." *See Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1992). As long as "two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *See FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 304 (2003) (citation omitted).

[9] As the Court's ruling on this issue is dispositive, it need not reach the other issues raised in the Defendant's Motion to Dismiss.

IT IS SO ORDERED at Hartford, Connecticut this 27th day of February 2018.

*James J. Tancredi*
*United States Bankruptcy Judge*
*District of Connecticut*